**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, INDEPENDENT, et al., Appellants,**

**v.**

**GALVESTON MARITIME ASSOCIATION, INC., et al., Appellees.**

No. 13963.

Court of Civil Appeals of Texas.

Houston.

March 22, 1962.

Rehearing Denied April 12, 1962.

Sewall Myer, Houston, for appellants International Longshoremen's Ass'n, Independent, South Atlantic & Gulf Coast District, I.L.A., Local No. 1273, I.L.A. and all other appellants save and except Local Unions Nos. 307, 872, 1224 and 1225 and their respective officers.

Mandell & Wright, Arthur J. Mandell, Houston, for appellants I.L.A., Local 307, Galveston, its president, Don Grines, I.L.A., Local 872, Houston, its president, Raymond Duncan, I.L.A., Local 1224, its president, Harold Butts, and I.L.A., Local 1225 and its president, Milton Forward.

Bryan F. Williams, Jr., Royston, Rayzor & Cook, Galveston, for appellees.

COLEMAN, Justice.

Appellants have perfected an appeal from an order of the trial court temporarily enjoining them from violating the provisions of a collective bargaining agreement.

Appellants, defendants in the trial court, are certain International Longshoremen's Local Unions, and some of their officers, sued individually and in their representative capacity. Appellees are Galveston Maritime Association, Inc., Houston Maritime Association, Inc., and the Master Stevedores' Association of Texas. The appeal is prosecuted on the transcript without a statement of facts.

It was stipulated that appellees are engaged in interstate commerce and that their activities and business affect commerce within the meaning of the provisions of the National Labor Relations Act. The parties entered into a collective bargaining agreement on October 1, 1956, the effective life of which has been extended by written agreement to September 30, 1962. While all of the terms of this agreement are not before us, appellees' petition contains the following allegations:

### V.

"Rule No. 7 of the aforesaid contract at all times pertinent hereto provided as follows:

"*'Rule No. 7—Number of men per gang*

"'Stevedore to have the option of employing any number of men he may consider proper when doing longshore work, and to have the privilege of moving men from hold to dock and dock to hold, and the number of men in a general longshore gang shall not be reduced when covering hatches.'

"Rule No. 27 A of the aforesaid contract at all times pertinent hereto provided as follows:

"*'Rule No. 27—Disputes*

"'A. No stoppage of work or lockouts. It is understood and agreed that during the life of this contract there shall be no stoppage of work or lockout under any circumstances whatsoever. It is further understood that in the case of disputes as to the interpretation of this contract or any working rules agreed to in connection with this contract, there shall be no cessation of work.'

"Rule No. 28 of said contract at all times pertinent hereto provided as follows:

"*'Rule No. 28—Guarantee*

"'The International Longshoremen's Association agrees not to uphold incompetency or shirking of work, and upon complaint by the Stevedore any man or group of men not properly performing their duty shall be laid off, and the Longshoremen's Association agrees to provide additional men to take their places. International Longshoremen's Association guarantees the full observance of this contract by the individual members of the Association. The Employers also pledge themselves to the faithful performance of their obligations under this contract. No rule or rules affecting in any way the cost of labor or working of vessels shall be adopted by either party of this agreement during the life of this agreement except by mutual consent.'"

Appellees further alleged:

### VII.

"During and after the month of June, 1961, defendants singly and in concert, began deliberately, wilfully and intentionally to breach, to conspire and combine to breach, and to encourage, induce, obtain and order breaches of the aforesaid contract, and stoppages and cessations of work by longshoremen members of defendant Locals in violation of the provisions of the aforesaid contract."

Appellants have earnestly contended both in the trial court and in this Court, that the trial court lacked jurisdiction to entertain the cause of action because it appears on the face of the pleadings and the stipulation that appellees' cause of action is based on a labor dispute arguably and debatably within the exclusive jurisdiction of the National Labor Relations Act and/or of the Labor Management Relations Act of 1947 as amended.

The Supreme Court of the United States in Charles Dowd Box Co., Inc. v. Courtney et al., 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483, opinion delivered February 19, 1962, held that the provisions of the Labor Management Relations Act of 1947 did not di-

vest a state court of jurisdiction over a suit for the violation of a contract between an employer engaged in an industry affecting commerce as defined in the Act and a labor organization. In this opinion Mr. Justice Stewart quoted from Garner v. Teamsters, Chauffeurs, etc., Union, 346 U.S. 485, 74 S. Ct. 161, 98 L.Ed. 228, where the doctrine was established that the Labor Management Relations Act of 1947 operates to withdraw from the jurisdiction of the states controversies arguably subject to the jurisdiction of the National Labor Relations Board and states: "By contrast, Congress expressly rejected that policy with respect to violations of collective bargaining agreements by rejecting the proposal that such violations be made unfair labor practices. Instead, Congress deliberately chose to leave the enforcement of collective agreements 'to the usual processes of the law.' "

On March 5, 1962, Mr. Justice Stewart delivered the opinion of the Supreme Court of the United States in Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America, v. Lucas Flour Company, 82 S.Ct. 571, affirming its decision in the Dowd case as to the jurisdiction of state courts in cases of breach of contract. The court clarified its decision in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, saying:

> "The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of Lincoln Mills, requiring issues raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor policy. * * * in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules."

Appellants contend that since we must apply federal law in the decision of this case, and since the case presents a labor dispute affecting commerce, and since appellants' activities are protected by Section 157, Title 29 U.S.C.A., and/or constitute an unfair labor practice act prohibited by Section 158, Title 29 U.S.C.A., the jurisdiction of such labor disputes is arguably or debatably within the purview of the National Labor Relations Act, Title 29, Section 141 et seq. Therefore, they contend, the pre-emptive doctrine of cases such as San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, based upon the exclusive jurisdiction of the National Labor Relations Board, deprives the state courts of jurisdiction. This contention, however, seems to have been answered in the Lucas case, 82 S.Ct. 571, in footnote 9 thereto, where the court held that the pre-emptive doctrine did not apply in suits for violation of a collective bargaining contract, and went on to say:

> "It is, of course, true that conduct which is a violation of a contractual obligation may also be conduct constituting an unfair labor practice, and what has been said is not to imply that enforcement by a court of a contract obligation affects the jurisdiction of the N.L.R.B. to remedy unfair labor practices, as such."

The appeals in both the Dowd case and the Lucas case were concerned with actions for damages, although ancillary injunctions had been issued in both cases, and the Supreme Court, in the Dowd case, specifically pointed out that it had never passed on the applicability of the Norris-LaGuardia Act to state courts applying federal labor law, or, for that matter, on the jurisdiction of federal courts in this area. In making this statement Mr. Justice Stewart cited McCarroll v. Los Angeles County District Council of Carpenters, 49 Cal.2d 45, 315 P.2d 322. In that case Carter, Justice, in his dissenting opinion summarized the majority holding as follows:

> "In this case the majority holds that where there is a collective bargaining

agreement between a union and employer, with a no-strike provision, which has been violated by the union, but there has been no unfair labor practice under the Labor Management Relations Act (29 U.S.C.A. § 151 et seq.) a state court has jurisdiction to give preventive relief against such violation; but, however, the federal substantive law (29 U.S.C.A. § 185) is exclusively controlling in rights and duties under such collective bargaining agreements where interstate commerce is affected (Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972); that state courts have jurisdiction generally of proceedings under section 301 of the Labor Management Relations Act although they must apply the federal substantive law; *that in applying such law they (state courts) may give whatever form of relief they deem proper, for example, injunctive relief enjoining the violation of a no-strike provision of the bargaining agreement as in the case at bar.*"

This right of state courts to enjoin violations of labor contracts has been affirmed in many cases by state supreme courts. Philadelphia Marine Trade Association v. International Longshoremen's Ass'n, 382 Pa. 326, 115 A.2d 733; Springer v. Powder Power Tool Corp., 220 Or. 102, 348 P.2d 1112; Anchor Motor Freight New York Corp. v. Local Union No. 445, etc., of Teamsters, 12 Misc.2d 757, 171 N.Y.S.2d 506; General Electric Co. v. International Union, 93 Ohio App. 139, 108 N.E.2d 211, appeal dism. 158 Ohio State 555, 110 N.E.2d 424; Connecticut Co. v. Division 425, etc., 147 Conn. 608, 164 A.2d 413. The Supreme Court of Texas on January 3, 1962, in Ex parte George, 358 S.W.2d 590, in affirming a conviction for violation of an injunction against picketing held: "However, an activity which is designed to secure the disregard, breach, or violation of a valid and subsisting labor agreement, falls well within circumstances

'(2) where the activity is of merely "peripheral concern" of the Labor Management Relations Act, * * *.'" (referring to the tests set out in Ex parte Dilley, 160 Tex. 522, 334 S.W.2d 425).

■■ In this case, therefore, the initial question to be decided is whether or not the pleadings demonstrate that this is a suit seeking the enforcement of a valid collective bargaining agreement. If it is such a suit, the trial court had jurisdiction of the cause of action and this Court has jurisdiction of the appeal. Appellees alleged such a contract and that appellants had violated same and threatened future violations, thereby causing them damage and threatening them with irreparable damage in the future. A cause of action for damages has been alleged. While the petition contains no prayer for damages, but only for injunction, this would not affect the court's jurisdiction (even assuming that the Norris-LaGuardia Act is applicable) for the pleadings could be amended prior to a hearing on the merits. If the petition is subject to exception by reason of the provisions of the Norris-LaGuardia Act, a dismissal would not be proper in absence of a failure to amend, after the exception is sustained. We do not feel, therefore, that questions posed by the Norris-LaGuardia Act are controlling on this appeal. It might be noted that so far as can be ascertained from the pleadings, neither party is seeking to change the terms of the contract, but on the contrary both parties allege that the contract is valid and binding and is being violated by the other party. We conclude that the suit is concerned with the enforcement of the contract and that the trial court had jurisdiction to entertain same.

This appeal concerns only the validity of the temporary injunction granted by the trial court.

The Supreme Court of Texas, in Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549, said:

"In a hearing on an application for a temporary injunction the only question

before the court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits. James v. [E.] Weinstein & Sons, Tex.Com.App., 12 S.W.2d 959, 960. To warrant the issuance of the writ, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. Rosenfield v. Seifert, Tex.Civ.App., 270 S.W. 220, 223; Nagy v. Bennett, Tex.Civ.App., 24 S.W.2d 778, 781; High on Injunctions, 4th Edition, Vol. 1, Sec. 5, p. 8. If the party enjoined prevails on a final trial of the case he finds protection against the improvident granting of the writ and consequent loss in the interim in the applicant's bond. Where the pleadings and the evidence present a case of probable right and probable injury, the trial court is clothed with broad discretion in determining whether to issue the writ and its order will be reversed only on a showing of a clear abuse of discretion. Texas Foundries v. International Moulders & Foundry Workers' Union, [151] Tex.Sup., [239], 248 S.W.2d 460, 462. There is no abuse of discretion in the issuance of a writ if the petition alleges a cause of action and the evidence adduced tends to sustain it. Southwestern Greyhound Lines, Inc. v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235."

In General Drivers, Warehousemen and Helpers, Local Union 745 v. Dallas County Const. Employers' Ass'n, Tex.Civ.App., 246 S.W.2d 677, error ref., n.r.e., the court said:

"But such are not the questions here. Appellate Courts will not disturb the exercise of a proper discretion by the trial judge in granting a temporary injunction to preserve the status quo unless the trial court abused such discretion. Nor will they determine, upon an appeal from an order granting a temporary injunction, an unsettled question of law or fact. Only where the record shows a clear and positive abuse of discretion by the trial court in passing on settled questions of law as applied to undisputed facts, will the Appellate Court disturb the trial court's exercise of his discretion in passing upon a question of whether justice to all parties will be best served by granting temporary relief against changing the last settled status of the parties. Texas Digest, Vol. 4, Part 1, Appeal and Error, ☞954, subds. (1), (3) and (4)."

■■■ Since no statement of facts is before the court, the findings of fact recited in the judgment of the trial court will be presumed to have support in the evidence. The trial court found that appellants had violated provisions of the contract and that they will continue to so violate said contract, causing irreparable injury to appellees. On the record before us we cannot say that the trial court abused its discretion in granting the injunction.

Appellants complain of the trial court's order in that, they contend, it: (1) grants relief not specifically requested by proper pleadings; (2) adjudicates the ultimate disputed issues of fact prior to trial on the merits; (3) changed the status quo of the parties; (4) subjects appellants to punishment for contempt of court if longshoremen decline or refuse to work in gangs of the size ordered; and (5) is too general, indefinite, drastic, unfair, unreasonable and inequitable.

The order restrained and enjoined the defendants "and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise from:

"1. Committing, doing uttering, writing or communicating any act, word or deed, written, spoken, or per-

formed, singly or in concert, which is intended, designed or calculated to induce, persuade, order, cause or bring about, the failure or refusal of any longshoreman to report to or to work aboard any vessel loaded or unloaded by any Employer because of the number of men in any gang or gangs of longshoremen being used, or to be used, by any Employer, or taking any action whatsoever for the purpose of causing any such work stoppage;

"2. Attempting to compel, persuade or induce by cessation of, threatened cessation of, or failure to work, or to report for work, any Employer to utilize more men in any longshore gang than said Employer wishes to use in the working of any vessel;

"3. Refusing to post, call and supply the number of men per longshore gang as ordered by the Employer; provided that nothing herein shall prevent Defendants from sending to any vessel such additional men as they contend should be employed, provided further, however, that Defendants shall not insist, require or demand that any number of men per gang in excess of the number ordered by the Employer be employed;

"4. Failing or refusing, singly or in concert, to perfom longshoring services aboard any vessel or vessels being loaded or unloaded by any Employer where the purpose of such failure or refusal is to attempt to persuade, induce or coerce any Employer to increase or change the number of men in any gang or gangs of longshoremen being used or to be used to load or unload any such vessels; * * *."

In the first amended original petition appellees prayed that defendants "and each of them and their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them, be enjoined by the Court from committing, doing, or uttering any act, word or deed, written, spoken or performed, singly or in concert, which is intended, designed or calculated, to induce, persuade, order, cause or bring about any breach of the aforesaid contract between defendants and plaintiffs by any longshoreman member of any defendant Local or which is intended, designed or calculated to induce, persuade, order, cause or bring about any work stoppage by or on the part of any member of any defendant Local in violation of the aforesaid contract, or because of any dispute arising thereunder; and that they be further enjoined from taking any other action whatsoever for the purpose of causing any such breach of contract or work stoppage; * * *."

■ The trial court's order merely granted specific relief which was well within the general prayer for relief as required by Rule 683, Texas Rules of Civil Procedure.

■ In the absence of a statement of facts, this Court is unable to determine what issues of fact were actually disputed or whether or not the order effects a change in the status quo. While the primary purpose of a judgment granting a temporary injunction is to maintain the status quo of the parties pending a hearing on the merits of a case, it happens that issues of fact or law must be determined in such preliminary hearings which go to the foundation and existence of the cause of action in the main case, in which event the judgment becomes, as to such issues, a final judgment. Wilson v. Abilene Independent School Dist., 204 S.W.2d 407, Tex.Civ.App., writ ref., n. r. e. The necessity for determining such questions or issues will not prevent the exercise of the trial court's jurisdiction to grant such an injunction. Lowe and Archer, Injunctions and Other Extraordinary Proceedings, § 328, p. 340, and cases there cited. The granting of affirmative relief by way of a mandatory injunction does not necessarily effect a change in the status quo. "The 'status quo' to be preserved by temporary injunction is 'the last, actual, peaceable,

noncontested status which preceded the pending controversy.'" Transport Co. of Texas v. Robertson Transports, Inc., supra. The granting of affirmative relief for the purpose of reestablishing the status quo may have been made necessary by the conduct of appellants. In the absence of a statement of facts we are unable to say that the trial court abused his discretion in this respect.

The trial court has enjoined appellants against refusing to post, call, and supply the number of men per longshore gang as ordered by the employer. We must assume that the evidence shows that appellants have contracted to supply the employers with longshoremen and that a failure to perform would constitute a breach of the contract. A mere failure to supply the number of men desired, however, would not constitute a violation of the injunction since the action enjoined is the *refusal* to supply.

■ The order further enjoins the *failure* or *refusal* to perform longshoring services aboard vessels being loaded or unloaded by an employer, but only where the purpose is to induce or coerce the employer to increase or change the number of men in the gang. As qualified the order is not subject to the objections levied against it. The order is sufficiently clear and precise considering the nature of the case and the activities with which it deals.

In support of their final point,

("If there is a reasonable doubt in the mind of this Court as to Appellees' right to ultimate recovery in this suit, the temporary injunction issued by the trial court in this case should be set aside and an order be entered by this Court denying Appellees' application for a Temporary Injunction.

"Such doubt in the minds of this Court may relate either to facts or to the law or to both.")

appellants cite Magnolia Pipe Line Company v. Moore, Tex.Civ.App., 292 S.W.2d 142, and Bates v. Texas Electric Ry. Co., Tex.Civ.App., 220 S.W.2d 707. Unquestion-

ably difficult legal questions, and probably disputed questions of fact, are involved in the decision of this case. However the cases cited stand for the proposition that in cases where considerable doubt exists concerning the law or the facts, the trial court should apply the "balance of convenience" doctrine. Here we must assume that the trial court found that greater hardship would result to appellees, if they should ultimately prevail at the trial on the merits, by a refusal of the injunction, than would be suffered by appellants, in the event they ultimately prevail, by granting the injunction. Bates v. Texas Electric Ry. Co., supra.

■ We have carefully considered all the points presented by appellants' briefs, and have concluded that no clear abuse of discretion is shown by the court's granting of the temporary injunction. Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460.

The judgment of the trial court is affirmed.