Dr. M. James BROOKS, Jr., et al., Appellants,

v.

M. Carl JONES, Appellee.

No. 8510.

Court of Civil Appeals of Texas, Texarkana.

March 14, 1978.

Rehearing Denied April 11, 1978.

John M. Smith, Roberts, Harbour, Smith, Harris, French & Ritter, Longview, Doyle Curry, Jones, Jones & Baldwin, Marshall, for appellants.

L. F. Burke, Longview, J. R. Cornelius, The Cornelius Law Firm, Jefferson, G. Brockett Irwin, Longview, for appellee.

RAY, Justice.

This case concerns public and private easements by prescription. Appellants (plaintiffs), Dr. M. James Brooks, Jr. and Dr. Jesse M. Brooks, doing business as Brooks Oil Company, a partnership, brought suit against appellee (defendant), M. Carl Jones, for the purpose of establishing a public easement over an East-West roadway and a private easement over a North-South roadway. The jury found that appellants had acquired a private easement over the North-South road by adverse possession for more than ten years and further found that the East-West road was a public road.

The trial court disregarded the findings of the jury relative to the North-South road as not being supported by the evidence, and entered a judgment that the Brookses had not established a prescriptive easement to the North-South road and that the East-West road was a public road. Both appellants and appellee have perfected their appeals.

The Brookses acquired a 30.57 acre tract of land in Marion County on September 15, 1958, from Mahlon Walters, an attorney. At that time Gulf Oil Corporation owned most of the land on the North, West, and South sides of the tract purchased by the Brookses. The East side of the Brookses' property was bordered by Caddo Lake. On April 27, 1960, M. Carl Jones bought the land surrounding the Brookses' tract. The East-West road begins at the end of F.M. Road 727 and is on lands owned by M. Carl Jones. The road leads in an Easterly direction from the end of F.M. Road 727 to a cabin owned by Jones on the East side of the Texas-Louisiana border. Prior to reaching the Texas-Louisiana border, a North-South road intersecting the East-West road leads north across the Jones land into the Brookses land.

In 1961, Jones, desiring to improve his property, notified the Brookses by letter dated May 31st, that he was locking the gate on the East-West roadway and sent Dr. James Brooks a key. Jones informed the Brookses that he wanted to keep poachers off his land and that he was going to place a gate at the entrance of the East-West roadway and was going to fence the rest of his property; and, that he wanted the Brookses to have a key. The Brookses notified Jones that they did not desire a key and that if Jones wanted to put up a gate, they would work out a double lock arrangement. The double lock arrangement persisted until 1972 when Jones locked the Brookses out of the East-West roadway and the North-South roadway ostensibly for the reason that the Brookses would not pay a part of the maintenance cost of the roads.

The evidence is undisputed that the Brookses and M. Carl Jones used both roads together. It is also clear that the Brookses had not established a private prescriptive easement to the North-South road before Jones acquired the property on which the North-South roadway is located. The prevailing rule in Texas relative to acquiring a *private* easement by prescription is as follows:

"To establish an easement by prescription over the land of another, it must be shown that the use was open, notorious, hostile, adverse, uninterrupted, exclusive and continuous for a period of more than 10 years. A failure to prove any one of the essential elements is fatal. Mere user alone will not create an easement. Moreover, the use of the way is permissive and not adverse, as a matter of law, if the way is also used by the owner of the land,

along with the adverse user. . . ."
*Rust v. Engledow*, 368 S.W.2d 635, 638 (Tex.Civ.App. Waco 1963, writ ref'd n.r. e.).

Since both the Brookses and Jones used the North-South road, its use was permissive and not adverse as a matter of law.

In 1972, the Brookses brought suit to enjoin Jones from locking them out of the access to their land. A temporary injunction was denied. When the case was to be heard on the merits, Jones interposed a plea of res judicata which was overruled. An appeal was taken from the order overruling the plea of res judicata, but the appeal was dismissed because this court could not determine from the record presented to us whether the order appealed from was a final judgment. *Jones v. Brooks*, 531 S.W.2d 221 (Tex.Civ.App. Texarkana 1975, writ ref'd n.r.e.). When the case was finally heard on its merits, Jones again interposed his plea of res judicata, asserting that the issue of whether or not the Brookses had acquired a prescriptive easement to the North-South road, and whether the East-West road was a public road, had already been determined by the trial court at the injunction hearing. We agree.

The injunction hearing was held by one judge and the trial on the merits was before a different judge. At the trial on the merits the record made at the injunction hearing was introduced to support the plea of res judicata presented by Jones. The record made at the injunction proceedings revealed a full development of the issues of the prescriptive easements. In Judge Morris Rolston's letter to the attorneys after the hearing on the injunction, he stated that the Brookses had failed to prove any easement by prescription because they had not proved exclusive use of the roadways. Judge Rolston stated

". . . It appears to be the law of this State that the use of the way is permissive and not adverse, as a matter of law, if the way is also used by the owner of the land, along with the adverse user—. . . ."

Judge Rolston subsequently signed an order in October, 1972, denying the request of the Brookses for an injunction. No appeal was taken by the Brookses from that order. Jones has preserved through the trial court and into this Court his plea of res judicata.

While the primary purpose of a judgment granting a temporary injunction is to maintain the status quo of the parties pending a hearing on the merits, it happens that issues of fact and law must be determined in such preliminary hearing. If these issues go to the foundation and existence of the cause of action in the main case, then the judgment in the injunction proceeding becomes final as to such essential issues. *International Longshoremen v. Galveston Maritime Ass'n.*, 358 S.W.2d 607, 613 (Tex.Civ.App. Houston 1962, no writ). This is an exception to the general rule that an interlocutory order will not support a plea of res judicata, and the exception only applies where the parties chose to turn the hearing on the application for temporary injunction into a hearing on the merits by their presentation of extrinsic evidence and the full development of the factual issues. *Furr's, Inc. v. United Specialty Advertising Company*, 385 S.W.2d 456, 458 (Tex.Civ. App. El Paso 1964, writ ref'd n.r.e.), cert. denied, 382 U.S. 824, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965); *Wilson v. Abilene Independent School District*, 204 S.W.2d 407, 410 (Tex. Civ.App. Eastland 1947, writ ref'd n.r.e.).

In the present case, the statement of facts from the hearing on the temporary injunction shows that the Brookses attempted to develop the same testimony there as that later adduced at the trial on the merits. While the testimony at the trial on the merits was more voluminous, there were no significant differences between the testimony adduced at the injunction proceedings and that elicited at the trial on the merits. At both hearings the Brookses contended that easements had been acquired over the East-West road and the North-South road and that Jones had wrongly deprived them of the use of such easements and further, that Jones should be enjoined from further depriving them of access to their tract of land. There were no

collateral or ancillary issues. *Wilson v. Abilene Independent School District,* supra. The pleadings in the hearing on the merits were substantially the same as those used in the hearing on the temporary injunction. All these facts make it apparent that Judge Rolston was called upon to decide the ultimate issues in the case at the injunction hearing and that once decided, further adjudication should have been barred. *Wilson v. Abilene Independent School District,* supra at 410.

The trial court should have sustained the plea of res judicata and dismissed the Brookses action because it was barred by a previous adverse judgment involving the same issues when Judge Rolston denied the temporary injunction on October 16, 1972.

■ The undisputed evidence shows that the East-West road and the North-South road were used contemporaneously by both the Brookses and M. Carl Jones. In both public and private easement cases, contemporaneous use of the way by the owner, renders use by others as permissive and not adverse as a matter of law. *O'Connor v. Gragg,* 161 Tex. 273, 339 S.W.2d 878 (1960); *Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622 (1950); *Rust v. Engledow,* 368 S.W.2d 635 (Tex.Civ.App. Waco 1963, writ ref'd n.r. e.). It is our opinion that *O'Connor v. Gragg* supra, supercedes and overrules any language to the contrary found in *Schultz v. Shatto,* 150 Tex. 130, 237 S.W.2d 609 (1951); *Fowler v. Matthews,* 204 S.W.2d 80 (Tex.Civ.App. Austin 1947, no writ); and, *Foster v. Patton,* 104 S.W.2d 944 (Tex.Civ. App. Austin 1937, writ dism'd).

■ There was no evidence introduced to establish that the general public was claiming the East-West road exclusively or adversely to the owners of the land on which the roadway was located. There was testimony to the effect that the road had been traveled by the public for many years, but that naked circumstance is not sufficient. *Ladies Benev. Society v. Magnolia Cemetery Co.,* 288 S.W. 812 (Tex.Com.App.1926, judgmt adopted).

Under the circumstances of this case, it was improper for the trial court, once it had concluded that appellants had not acquired a private easement to the North-South road, to proceed to declare the East-West roadway to be public. The East-West road begins on Jones' property and ends on Jones' land; it is completely surrounded by Jones' land and is used as access only by Mr. Jones, his tenant and the Brookses. Since the Brookses did not acquire an easement to the North-South roadway, there was no reason to declare the East-West roadway a public road. There would be no reason for the public to use the East-West roadway other than to trespass upon the Jones' land. *Huffman v. Alexander,* 276 S.W. 959, 960 (Tex.Civ.App. Waco 1925, no writ).

■ There is yet another reason why appellants are not entitled to have the East-West road declared a public road. Ordinarily, only the State or one of its subdivisions may bring a suit for the removal of an obstruction of a street or public roadway. A private individual who has been specially injured by an obstruction and is interested in preventing its continuance may, on a proper showing, maintain a suit in equity to compel the removal of the obstruction. The complainant must show that he has sustained, by reason of the obstruction, a peculiar or special injury different from that suffered by the public generally. If the injury is common to the public, and not special to an individual, redress in the nature of abatement of the encroachment must be secured in behalf of the public through a proper representative. The elements of a cause of action by a private citizen seeking recovery of damages or seeking a mandatory order for the removal of the obstruction, are as follows: (1) that the acts of the defendant constitute a nuisance in law; and, (2) that the damage to the plaintiff is something more than the damage suffered by all who use the road; and, (3) that the thoroughfare is in fact a public way. See 28 Tex.Jur.2d, Highways and Streets, Sections 193, 196, 198 and 199.

■ Once the trial court had determined that the Brookses had not acquired an ease-

ment to the North-South roadway, it became the court's duty then to decide if the Brookses had a justiciable interest in the East-West roadway. Since the East-West roadway begins on Jones' land and ends on Jones' land we have concluded that the appellants failed to allege and prove the necessary elements to enjoin Jones from maintaining his locked gate at the entrance to the roadway.

The disposition of this case would ordinarily be that the judgment of the trial court would be affirmed as to its disposition of the case related to the North-South roadway and a reversal of that part of the judgment declaring the East-West roadway to be a public road with a rendition by this Court that the Brookses take nothing as to the East-West road. However, since we have concluded that the trial court should have sustained the plea of res judicata, it is our duty to enter the judgment which the trial court should have rendered, that being, the dismissal of appellants' cause of action. It is accordingly ORDERED that appellants' cause of action be in all things dismissed. Tex.R.Civ.P. 434.

CORNELIUS, C. J., not participating.