M. James BROOKS, Jr., et al.,
Petitioners,

v.

James Marshall JONES, Respondent.

No. B–7625.

Supreme Court of Texas.

Feb. 28, 1979.

Rehearing Denied April 3, 1979.

Roberts, Harbour, Smith, Harris, French & Ritter, John M. Smith, Longview, for petitioner.

L. F. Burke, Longview, J. R. Cornelius, Jefferson, G. Brockett Irwin, Longview, for respondent.

GREENHILL, Chief Justice.

Dr. James Brooks, his brother, and Brooks Oil Company, all hereinafter referred to as Brooks, brought suit to enjoin M. Carl Jones from interfering with his and their use of two different but adjoining roads across the land of Jones.[1] An illustrative plat of the land and the roads is set out below; and, as will be discussed below, this is but the last chapter in protracted litigation.

Upon the trial which is before us, the jury found for Brooks. It found that an East-West road across Jones' land had been dedicated to the public, and that Brooks had acquired the right to use an adjoining North-South road by prescription,—ten years of use by Brooks adverse to Jones. The trial court agreed that the East-West road had been dedicated, but it entered a judgment notwithstanding the jury's verdict as to the North-South road. It held that as a matter of law, Brooks had not acquired the right to use the North-South road by prescription.

The Court of Civil Appeals was of the view that the trial court correctly held that Brooks had not made such requisite exclusive and adverse use of the North-South road as to be ripen into a prescriptive right. Instead of affirming the trial court's judgment in this respect, it ordered Brooks' case dismissed upon the basis of a res judicata plea. 564 S.W.2d 147. A writ of error was granted because of that holding which we regard as erroneous. Our holding is that the trial court correctly refused to declare an easement by prescription in the North-South road, and that Brooks had no justiciable interest in the East-West road.

Brooks acquired a 30.57-acre tract of land (the shaded portion in the map below) in Marion County on September 15, 1958, from Mahlon Walters. At that time Gulf Oil Corporation owned most of the land on the north, west, and south sides of the tract purchased by Brooks. The east side of Brooks' property is bordered by Caddo Lake. On April 27, 1960, M. Carl Jones bought the land surrounding Brooks' tract from Gulf.

The East-West road begins on the west at the end of F. M. Road 727 and is on land owned by M. Carl Jones. The road leads in an easterly direction from the end of F. M. Road 727 to a cabin owned by Jones on the east side of the Texas-Louisiana border.

---

1. During the course of this lawsuit M. Carl Jones has died. Upon the filing of a suggestion of death by counsel, this Court granted the motion to substitute James Marshall Jones, the provisional administrator of Mr. M. Carl Jones' estate, as Respondent.

Prior to reaching the Texas-Louisiana border, the North-South road intersects with the East-West road and leads north across Jones' land into Brooks' land. Brooks and others had used the East-West road, and the trial court found it to be a dedicated road. Brooks had also used the North-South road over Jones' land, as had Jones.

In 1961, Jones, desiring to improve his property, notified Brooks by letter dated May 31st, that he was locking the gate on the North-South roadway. Jones also informed Brooks that he wanted to keep poachers off his land and that he was going to place a gate at the entrance of the North-South roadway and was going to fence the rest of his property, and that he wanted Brooks to have a key. He sent

Brooks a key. Brooks notified Jones that he did not desire the key, and that if Jones wanted to put up a gate, they would work out a double lock arrangement. Under this arrangement each man could unlock the gate using his own separate key to unlock his own separate lock; apparently, each lock was placed in a different link of a chain. This was done. The double lock arrangement continued until 1972 when Jones locked Brooks out of the East-West roadway and the North-South roadway ostensibly for the reason that Brooks would not pay a part of the maintenance cost of the roads.

### Previous Trials and Res Judicata

This dispute has been in the courts since 1972. In that year, Brooks brought this suit against Jones. The prayer was for a temporary injunction,—and upon a final hearing, for a permanent injunction. A judgment was entered in 1972 which simply denied Brooks injunctive relief. No appeal was taken.

Brooks again brought the matter before the trial court in 1974, and the trial court dismissed the case as having already been adjudicated; i. e., res judicata. In an appeal from that action, the Court of Civil Appeals reversed. Its opinion recites that the record on the former hearing had not been introduced; and it could not tell whether an interlocutory temporary injunction to preserve the status quo had been entered, or whether there had been a full trial on the merits. The appellate court wrote that the only evidence introduced tended to show that it was limited to "issues pertinent to an application for *temporary* injunctive relief." The earlier appellate court's judgment was that the appeal of such an interlocutory order should be dismissed, and the appeal was dismissed. 531 S.W.2d 221 (1975). A writ of error was refused by this Court with the notation of no reversible error.

While the Court of Civil Appeals in this appeal indicated that the trial court properly granted the judgment notwithstanding the verdict as to the North-South road, it

held that the matter really was "res judicata" this time. Its order was that the case should be, and was, dismissed. A writ of error was granted because of that holding, and we hold that it was error. We agree, however, in substance with the dictum of the Court of Civil Appeals, that Brooks did not establish a right by prescription on the North-South road, and that, in effect, Brooks has no justiciable interest in the East-West road.

■ The Court of Civil Appeals held that the matters settled at the hearing held on the application for a temporary injunction were res judicata as to the present case because the parties and issues decided were much the same. It relied on as authority several decisions which have made somewhat similar holdings. *See Wilson v. Abilene Independent School District,* 204 S.W.2d 407 (Tex.Civ.App.—Eastland 1947, writ ref'd n. r. e.); *International Longshoremen v. Galveston Maritime Ass'n,* 358 S.W.2d 607 (Tex.Civ.App.—Houston 1962, no writ); and *Furr's Inc. v. United Specialty Advertising,* 385 S.W.2d 456 (Tex.Civ. App.—El Paso 1964, writ ref'd n. r. e.).

In each of the cases relied upon by the Court of Civil Appeals, an appeal was taken from the temporary injunction hearing. In the instant case, although notice of appeal was given, no appeal was ever prosecuted from the denial in 1972 of the temporary injunction. It can be inferred that Brooks apparently decided to wait and settle the issue in the trial for a permanent injunction.

It is true that this Court has long held that ". . . if in a former suit an issue which goes to the foundation and existence of a cause of action has been litigated, such issue cannot be again litigated in a later suit, regardless of the form it may take." *Mayfield Co. v. Rushing,* 133 Tex. 120, 127 S.W.2d 185 (1939). As was stated in *Wilson v. Abilene Independent School District, supra* :

The scope of the term 'final judgment' within the meaning of the rule here under consideration, has been declared not to be confined to a final judgment in an

action but to include any judicial decision upon a question of fact or law *which is not provisional and subject to change in the future by the same tribunal.*[2]

A corollary rule is aptly stated in *Texaco Inc. v. Parker*, 373 S.W.2d 870 (Tex.Civ. App.—El Paso 1963, writ ref'd n. r. e.), dealing with the choices of a losing litigant in a hearing on temporary injunction:

> . . . *a dissatisfied litigant has a choice—he may appeal or seek a trial on the merits. Having elected to appeal, he should thereafter be bound by matters fully litigated and determined in the same manner as appeals from final judgments.*

■ In cases such as this, where the losing party elects not to pursue an appeal, but instead proceeds to the trial on the merits of a permanent injunction, such party will not be bound, under the doctrine of res judicata, by those issues decided in the prior hearing on the temporary injunction.

### Prescriptive Easement

Although the Court of Civil Appeals erred in dismissing the appeal from trial court, it did not commit error in its opinion wherein it applies the Texas law concerning prescriptive easements. The undisputed facts indicate that both parties used the North-South road from between 1960, when Jones bought the surrounding land, until 1968 or 1969. Therefore, Brooks' use of the North-South road coincided with Jones' use except for the period between September 11, 1958 and April 27, 1960, which was prior to Jones' purchase of the land. Furthermore, Brooks has not contended before this Court that he has an implied easement of necessity.

■ To obtain a prescriptive easement one must use someone else's land in a manner that is open, notorious, continuous, exclusive, and adverse for the requisite period of time. *Texas W. Ry. Co. v. Wilson*, 83 Tex. 153, 18 S.W. 325 (1892). In that case this Court stated:

The doctrine is well established that the burden of proof is upon the party claiming the easement in the land of another without any contract or express grant thereto, to establish all of the necessary facts from which the right may be presumed in his favor. He must clearly show open and peaceable possession for the full period required under the statute to preclude a recovery of land against one having no other title, and with at least the implied acquiescence of the owner, and that during all of such time *the use and enjoyment of the right has been exclusive, uninterrupted and continuous, and under a claim of right adversely to the owner of the fee. If there is a failure to establish any of these essential elements by a preponderance of the evidence, the claim to the easement cannot be maintained* [citing authorities].

There is no evidence of use for the required length of time of the land in question by Brooks which would be to the exclusion of the use by Jones.

■ Brooks contends that the fact that he returned a key to the gate to the North-South road given to him by Jones, insisting instead on a double lock system, evidences his claim of right to the North-South road. It has long been the law in Texas that when a landowner and the claimant of an easement both use the same way, the use by the claimant is not exclusive of the owner's use and therefore will not be considered adverse. In *Sassman v. Collins*, 53 Tex.Civ. App. 71, 115 S.W. 337 (1908, writ ref'd), it was written:

In this case it was shown that the owner of the servient estate likewise used this way for his own convenience and in connection with his [own] farm. Therefore, the use of the way by others could not become adverse, for it is held . . . that the use of a way over the land of another is not deemed adverse where the way is also used by the owner of the land; and in such a case use for the prescriptive period will not give a way by prescription.

---

2. All emphases contained herein are added.

Following *Sassman v. Collins, supra,* there were several opinions by courts of civil appeals which followed the rule as set out. *See, e. g., Callan v. Walters,* 190 S.W. 829 (Tex.Civ.App.—Austin 1916, no writ) and *Tolbert v. McClellan,* 241 S.W. 206 (Tex.Civ.App.—Texarkana 1922, no writ). There was at least one intermediate court which in dicta refused to follow the *Sassman* rule. *Foster v. Patton,* 104 S.W.2d 944 (Tex.Civ.App.—Austin 1937, writ dism'd). However, the *Foster* case was specifically not followed by this Court in *Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622 (1950). In *Othen,* this Court adopted the rule as set out in *Sassman.* The court in *Othen* quoted the court in *Callan v. Walters*:

> The use of a way over the land of another when the owner is also using the same is not such adverse possession as will serve as notice of a claim of right, for the reason that the same is not inconsistent with a license from the owner.

This rule was reaffirmed by this Court in *O'Connor v. Gragg,* 161 Tex. 273, 339 S.W.2d 878 (1960). The Court held:

> There is no evidence which even tends to show a right, or a claim of right, of either the Graggs or the public *to use the roadway to the exclusion of [the] petitioners' [owners'] right to use the roadway involved.*

While other jurisdictions do not require the prescriptive use to be exclusive by use by the owner of the land,[3] this rule of property has long been the established rule in Texas. *See also Rickel v. Manning,* 369 S.W.2d 655 (Tex.Civ.App.—Waco 1963, writ ref'd n. r. e.); *Rust v. Engledow,* 368 S.W.2d 635 (Tex.Civ.App.—Waco 1963, writ ref'd n. r. e.); *Gill v. Pringle,* 224 S.W.2d 525 (Tex.Civ.App.—Waco 1949, writ ref'd); and *Dailey v. Alarid,* 486 S.W.2d 620 (Tex. Civ.App.—Tyler 1972, writ ref'd n. r. e.). In the present case where both Jones, the landowner, and Brooks used the road, each in furtherance of his own purposes, we cannot say that there is any evidence of exclusiveness of use.

**3.** The law in many other jurisdictions does not require the easement to be used by a person without the concurrent use by the owner as long as the use is adverse. *See* 1 THOMPSON

■ Brooks, having failed to satisfy all of the requirements for a prescriptive easement, acquired no easement rights in the North-South road. Since Brooks has no easement rights in the North-South road, and the East-West road does not touch his land, he does not have a justiciable interest in the East-West road. A public dedication is enforceable by the public authorities of the state, county or municipality involved. *See State v. Goodnight,* 70 Tex. 682, 11 S.W. 119 (1888); *Webb, Texas Volunteer Fire Dept. v. English,* 377 S.W.2d 237 (Tex.Civ. App.—Fort Worth 1964, writ ref'd); and *City of Corsicana v. Zorn,* 97 Tex. 317, 78 S.W. 924 (1904). Public dedications are enforceable by private landowners who have a property interest that will suffer if the publicly dedicated land is obstructed. *Fall v. Thompson,* 126 Tex. 326, 87 S.W.2d 712 (1935). However, the East-West road in question lies entirely upon the land owned by Jones. Since Brooks could not reach his property even if the East-West road was publicly dedicated, he has no property right which would give him a justiciable interest in this road.

■ Ordinarily, when a court of civil appeals has dismissed a case and has not ruled upon its merits, we will remand the cause to that court for consideration. *Bay v. Mecom,* 393 S.W.2d 819 (Tex.1965). However, in cases such as this where it is apparent that the Court of Civil Appeals has fully considered the merits and has indicated how it would dispose of the case on remand, a remand would be pointless; and this Court will render judgment.

Therefore, the judgment of the Court of Civil Appeals dismissing the appeal is reversed. Judgment is here rendered that, as found by the trial court, Brooks does not have a prescriptive easement on the North-South road; and judgment is further rendered that Brooks has no justiciable interest in the East-West road.

POPE, J., not sitting.

ON REAL PROPERTY § 422 (3rd ed. 1939) and 4 TIFFANY, REAL PROPERTY § 1199 (3rd ed. 1975). The text writers appear to favor this "majority" rule.