# Supreme Court of Texas

---

No. 22-0424

---

Nathan D. Albert and Chisholm Trail Redi-Mix, LLC,

*Petitioners*,

v.

Fort Worth & Western Railroad Company,

*Respondent*

---

On Petition for Review from the
Court of Appeals for the Tenth District of Texas

---

## PER CURIAM

In this real-property easement dispute, the trial court rendered judgment on a jury verdict finding that landowners were entitled to an easement by necessity, an easement by estoppel, and a prescriptive easement allowing them to cross railroad tracks, and that the landowners did not trespass on the railroad's property. The court of appeals reversed, holding the evidence was legally insufficient to support the jury's easement findings and factually insufficient to support the trespass finding. We hold that the evidence was legally sufficient to support the jury's prescriptive-easement finding and

therefore reverse the court of appeals' judgment in part. We remand the case to the court of appeals to consider unaddressed issues.

## I. Background

Nathan Albert purchased a ten-acre tract of land in Johnson County (the Property) to build a cement mixing plant. Albert and two business partners formed Chisholm Trail Redi-Mix, LLC to operate the planned plant.

Fort Worth & Western Railroad Company (Western) owns the tract of land that separates the Property and State Highway 171. Both properties were originally part of the same 702-acre tract. That tract was severed in 1887 when a 12.7-acre strip was conveyed in fee simple to Gulf, Colorado & Santa Fe Railway (Gulf), Western's predecessor-in-interest, to build railroad tracks. This severance divided the 702-acre tract into a larger Southwestern Tract, a smaller Northeastern Tract, and a narrow 12.7-acre strip (the Railroad Tract) running southeast from the northern edge of the tract to the original tract's southeastern corner. The Property is in the Northeastern Tract.

When the original tract was severed in 1887, a military road connecting Fort Graham to Fort Belknap ran parallel to the 12.7-acre strip that became the Railroad Tract. Today, Highway 171 follows approximately the same path as the old military road. As a result, the Railroad Tract separates the Northeastern Tract—including the Property—from Highway 171.

A single-lane gravel road crossing the Railroad Tract connects the Property to Highway 171 over the railroad tracks. In 1959 or 1960, the Property's previous owner, Junior Meek, obtained a license from Gulf

allowing him to build a gravel crossing from the Property, across the Railroad Tract, to Highway 171. The license restricted Meek's use to personal and agricultural purposes, and Meek could not assign the license without Gulf's permission. Although Meek's license gave him permission to build the crossing, an aerial survey conducted in 1941 indicates that an unimproved road already existed where the gravel crossing now sits.

Meek sold the Property to Marion and Jennie Scott on April 22, 1969. The Property changed hands several more times until Albert eventually purchased it from Robert Matthews in 2016.

Meek did not attempt to assign his license to use the gravel crossing when he sold the Property in 1969. Nor did any of the subsequent owners ever attempt to acquire a new license to use the crossing. Nonetheless, during the following five decades, the subsequent owners continued to use the gravel crossing for various purposes, including agricultural, commercial, and personal use—despite lacking a license to do so. Over these intervening decades, none of the Railroad Tract's owners objected to the gravel crossing's continued use or attempted to physically block the crossing's path over the railroad tracks.

Eventually, Western acquired the Railroad Tract in 2005. Shortly thereafter, Western began sending notices to the Property's owners informing them that they were trespassing on Western's right-of-way by using the gravel crossing. Western first objected in 2006 and sent additional letters in 2008 and 2009. But like its predecessors, Western never attempted to physically interrupt the gravel crossing's path over

3

the railroad tracks.  So, by all appearances, the gravel crossing has remained an unblocked route connecting the Property and Highway 171 since the crossing was first built sometime before 1941.

Albert's business partners began negotiations with Matthews to purchase the Property in early 2016.  As part of the negotiations, Matthews applied for a special-use permit with the City of Cleburne so that Chisholm Trail could build its concrete plant.  Western sent a representative to the special-use meeting and objected to the permit's issuance.  Western also objected to Chisholm Trail's application to the Texas Commission on Environmental Quality for an air quality permit to operate a concrete plant.  Western's basis for both objections was that allowing commercial vehicles to cross its tracks would be dangerous given the short distance between the railroad tracks and the highway.

After Albert began negotiations to purchase the Property, a Western employee met with Albert's business partners to discuss the proposed concrete plant.  One issue discussed at the meeting—which Albert himself did not attend—was use of the railroad crossing. Western's employee provided Albert's partners with a sample crossing agreement containing insurance and improvement requirements and a list of vendors that had to be used to make the improvements. Ultimately, Albert and Western did not execute a crossing agreement.

The Property's sale to Albert closed in April 2016.  Chisholm Trail subsequently built and began operating its concrete plant.  Because the gravel crossing is the sole point of ingress and egress to the concrete plant from Highway 171, Chisholm Trail's trucks used the crossing to reach the highway.

4

Western sent Albert a cease-and-desist letter demanding that he and Chisholm Trail stop using the gravel crossing. Albert and Chisholm Trail sued, seeking a declaratory judgment that they held an easement by estoppel, an easement by necessity, and a prescriptive easement for the gravel crossing. Western counterclaimed for trespass and sought injunctive relief and attorney's fees.

The case proceeded to a jury trial. The jury found that Albert was entitled to an easement by estoppel, an easement by necessity, and a prescriptive easement over the railroad crossing. The jury also found that neither Albert nor Chisholm Trail trespassed on the Railroad Tract and that Albert and Chisholm Trail incurred reasonable and necessary attorney's fees. The trial court rendered judgment on the verdict.

Western appealed, arguing the evidence was legally insufficient to support the easement findings and factually insufficient to support the trespass findings. The court of appeals reversed and rendered judgment for Western as to the easement claims, holding that the evidence was legally insufficient to support all three easement findings. ___ S.W.3d ___, 2022 WL 554108, at *4-5 (Tex. App.—Waco 2022). The court of appeals also reversed on the trespass claim for two reasons. *Id.* at *6. First, because the court had held that Albert and Chisholm Trail were not entitled to an easement as a matter of law, Western necessarily established that they had trespassed on the Railroad Tract. *Id.* The court further concluded that, independent of the easement, the evidence established that Albert and Chisholm Trail built a driveway that encroached on the Railroad Tract without Western's consent. *Id.* As Western only challenged the trespass findings on factual-sufficiency

5

grounds, the court of appeals remanded that claim to the trial court along with Western's requests for injunctive relief and attorney's fees. *Id.* at \*6. The court did not reach other issues raised by Western pertaining to the geographic boundaries of the easement described in the trial court's judgment and the easement's permitted uses. *Id.*

## II. Standard of Review

When reviewing a legal-sufficiency challenge to a jury verdict, we view all evidence in the light most favorable to the verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We credit favorable evidence if a reasonable juror could do so and disregard contrary evidence unless a reasonable juror could not. *Id.* That is, we indulge every reasonable inference that the evidence supports. *Id.* at 822. But if the evidence allows for only one inference, we must reverse any jury finding that runs contrary to that inference. *Id.*

As a result, we will overturn a judgment on a jury verdict on legal-sufficiency grounds if there is a complete absence of evidence proving a vital fact, the rules of law or evidence bar the court from weighing the only evidence proving a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence conclusively disproves the existence of a vital fact. *Id.* at 810. More than a mere scintilla of evidence exists to prove a vital fact, making reversal on legal-sufficiency grounds improper, when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *King Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

6

## III. Analysis

An easement is a nonpossessory interest in real property that authorizes its holder to use another's property for a particular purpose. *Lance v. Robinson*, 543 S.W.3d 723, 736 (Tex. 2018). An easement entitling an adjacent landowner to cross over an adjoining tract of land—also called a "way easement"—is an easement appurtenant to the land; the easement attaches to the land itself and conveys with the dominant estate. *See Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 203 (Tex. 1962). Because easements appurtenant are real-property interests, the statute of frauds generally requires that a signed writing evidence their creation or transfer. *Id.* But the law recognizes several exceptions to the writing requirement, implying an easement if the party claiming it can prove certain facts. *Id.* Given that implied easements run "somewhat in derogation of the registration statutes and indeed the Statute of Frauds," courts construe them narrowly. *See id.* at 208.

Here, Albert submitted three implied-easement theories to the jury—easement by estoppel, easement by necessity, and prescriptive easement—and the jury returned a verdict for Albert on all three theories. We agree with the court of appeals that the evidence is legally insufficient to support the jury's easement-by-estoppel and easement-by-necessity findings, and further discussion of these issues would not add to the jurisprudence of the state. *Virlar v. Puente*, 664 S.W.3d 53, 66 (Tex. 2023). However, we hold there is legally sufficient evidence supporting the jury's prescriptive-easement finding, requiring partial reversal of the court of appeals' judgment.

7

A person can acquire a prescriptive easement if he uses someone else's land in a manner that is adverse, open and notorious, continuous, and exclusive for the requisite ten-year period. *Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979); TEX. CIV. PRAC. & REM. CODE § 16.026.[1] The burden is on the party claiming the easement rights to establish all necessary facts. *Brooks*, 578 S.W.2d at 673.

The adverse use necessary to establish a prescriptive easement is the same adversity of use necessary to establish title by adverse possession. *Boerschig v. Sw. Holdings, Inc.*, 322 S.W.3d 752, 766 (Tex. App.—El Paso 2010, no pet.). As such, the dominant estate holder's use must be of such a nature and character that it notifies the servient estate holder that the claimant is asserting a hostile claim. *Brooks*, 578 S.W.2d at 673; *see also Tiller v. Lake Alexander Props., Ltd.*, 96 S.W.3d 617, 624 (Tex. App.—Texarkana 2002, no pet.). Use is open and notorious when the servient owner has actual or implied notice of the use. *Evans v. Scott*, 83 S.W. 874, 876 (Tex. Civ. App. 1904, no writ). Finally, the use must be exclusive; when a landowner and the claimant of an easement "both use the same way," the claimant's use is not exclusive and is thus insufficient to establish a prescriptive easement. *Brooks*, 578 S.W.2d at 673.

Because way easements—including those acquired by prescription—are easements appurtenant, they run with the land until terminated. *See Drye*, 364 S.W.2d at 207. So, once established, the way

---

[1] The jury was similarly instructed that "[a]n easement by prescription is established by the open, notorious, hostile, adverse, uninterrupted, exclusive and continuous use of the railroad crossing for a period of more than 10 years, by Albert and his predecessors in title." (Capitalization omitted).

easement allows the successors in interest to the dominant estate to continue crossing the servient estate along the established way. *Id.* Easements appurtenant can terminate by merger of the dominant and servient estates, abandonment, prescription, or failure of purpose. RESTATEMENT (THIRD) PROPERTY: SERVITUDES § 5.1 cmt. a (AM. L. INST. 2023).

The jury heard three key pieces of evidence that would allow a reasonable and fair-minded juror to conclude that Albert is entitled to a prescriptive easement over the gravel crossing. First, although only Meek had a license to use the gravel crossing, the trial testimony established that Meek's successors in interest continued to use the crossing for five decades before Western objected to the continued use. Second, trial testimony indicated that only the Property's owners, their licensees, and their invitees used the gravel crossing during this time. And third, the gravel crossing appears to pre-date the Meek license by nearly two decades and was readily observable in an aerial survey of the surrounding area as early as 1941.

The parties agree that Meek received a license to use the gravel crossing in 1959 or 1960. The license is in the record and expressly states that Meek could not assign it without Gulf's consent.[2] Meek sold the Property in 1969, and the jury heard testimony that the Property's subsequent owners continued using the gravel crossing to access the Property, which over the years was utilized for personal, agricultural, and commercial purposes. In particular, the jury heard testimony from

---

[2] Albert argues that the trial court abused its discretion in admitting the license as a trial exhibit. We need not address this issue.

both Rusty Simpson and Brad Friermood, who have lived in the area their entire lives. Friermood was born in 1975 and was 42 at the time of the trial. Simpson was born in 1968 and was 49 at the time of the trial. Both have known about the Property and been familiar with its use since childhood. Both testified that the Property's owners always used the gravel crossing to access the Property for as long as they could remember.

Because only Meek ever attempted to acquire a license to use the gravel crossing, Meek's successors in interest openly trespassed on the Railroad Tract when they continued to use the crossing. Unlike Meek, neither the Scotts nor their successors in interest had a license to use the gravel crossing, so their continued use of the crossing was adverse to Western's rights.[3] The testimony indicates that this adverse use remained continuous for decades as the point of ingress and egress for the Property's owners. Finally, this use was readily discoverable. Friermood and Simpson described the continued use as well known within the community. Indeed, even Western's representative admitted he was aware that Meek's successors continued to use the crossing, despite lacking an agreement with the Railroad Tract's owner to do so. Further, the gravel crossing has remained readily observable since at

---

[3] The facts supporting Albert's prescriptive easement all arose *after* Meek sold the Property to the Scotts in 1979. More to the point, the Scotts and their predecessors continued acting as if they had a license to use the gravel crossing, even though they did not. The court of appeals' reliance on testimony indicating that Meek's business partner, Johnson, also used the gravel crossing when Meek owned the Property is therefore misplaced. *See* 2022 WL 554108 at *5. The extent to which Meek and his licensees and invitees used the gravel crossing is simply irrelevant to whether the Property's subsequent owners continued using the gravel crossing despite lacking the right to do so.

10

least 1941. In fact, as early as the 1941 Tobin Survey, local maps have listed the gravel crossing as a "private road" leading into the Property. Western's own employees admit that the crossing is open and obvious to anyone who walks up or drives by the area.

Again, when reviewing jury findings for legal sufficiency, we examine the record in the light most favorable to the verdict and ask only whether that evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *City of Keller*, 168 S.W.3d at 807. Here, Friermood's and Simpson's testimony provides evidence by which a reasonable juror could find that Albert's predecessors in interest used the gravel crossing in an adverse, open-and-notorious, continuous, and exclusive manner for at least ten years. Western faults that testimony for failing to describe the use on a year-by-year, owner-by-owner basis, but we cannot say that the absence of such specificity renders the evidence legally insufficient to support the finding of continuous, open, and adverse use.

Western also argues that the prescriptive-easement finding must fail because the evidence adduced at trial conclusively establishes that the adverse use was not exclusive. In particular, Western argues that both it and its predecessors have continuously used the railroad tracks that the gravel road crosses for well over a century. *See Brooks*, 578 S.W.3d at 673 ("It has long been the law in Texas that when a landowner and the claimant of an easement both use the same way, the use by the claimant is not exclusive of the owner's use and therefore will not be considered adverse."). This argument misunderstands the law.

11

The exclusivity analysis focuses on whether the landowner and the easement claimant "both use the same way." *Id.* A "way" is "a path, passage, road, or street." *Way*, BLACK'S LAW DICTIONARY (4th ed. 1968). Here, the Property's owners have used the gravel crossing over the Railroad Tract as a "path or passage" to and from Highway 171 for decades according to witness testimony. Western admits that it solely runs trains on the tracks, never crossing the tracks via the gravel crossing, and there is no evidence attempting to show any predecessor differed.

Reaching this conclusion does not, as Western contends, confuse using the "same way" with using property "*in* the same way." Again, exclusivity is destroyed when the landowner and easement claimant use the same "path or passage" that constitutes the easement. Western does not use, and by all accounts has never used, the "way" at issue—the gravel road that crosses the tracks. Rather, Western uses the tracks perpendicular to the gravel crossing, which does not preclude exclusivity. *See Nave v. City of Clarendon*, 216 S.W. 1110, 1112 (Tex. Civ. App.—Amarillo 1919, no writ) (holding that a hotel adjacent to a rail line that built a cement walk from the hotel to the train depot on the other side of the tracks obtained a prescriptive easement over the tracks).

In short, the evidence adduced at trial is legally sufficient to support the jury's finding that Albert is "entitled to a prescriptive easement for use of the railroad crossing." The court of appeals erred in holding otherwise.

### III. Conclusion

Because legally sufficient evidence supports the jury's prescriptive-easement finding, the court of appeals erred by reversing that portion of the trial court's judgment on the verdict on legal-sufficiency grounds. However, the court of appeals correctly reversed the portions of the trial court's judgment declaring the existence of an easement by estoppel and an easement by necessity. Accordingly, without hearing oral argument, we affirm the court of appeals' judgment in part and reverse it in part. TEX. R. APP. P. 59.1. We remand the case to the court of appeals to consider in the first instance the unaddressed issues involving the easement's boundaries and permitted uses.

**OPINION DELIVERED:** February 16, 2024