



## OPINION

No. 04-10-00366-CV

**RDG PARTNERSHIP**, Gene Jupe, and Shirley Jupe,
Appellants/Cross-Appellees

v.

George **LONG**,
Appellee/Cross-Appellant

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 05-10-0720-CVA
Honorable David Peeples, Judge Presiding[1]

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  June 22, 2011

AFFIRMED

This appeal arises from a real property dispute between adjoining landowners RDG

Partnership, Gene and Shirley Jupe, and George Long.  Long filed suit, and the Jupes filed

counterclaims.  All parties appeal raising numerous issues.  Finding no reversible error or abuse

of discretion, we affirm the trial court's judgment.

---

[1] Sitting by assignment.

**FACTUAL BACKGROUND**

Since 1997, Long and the Jupes have been adjoining property owners in Atascosa County. In 2005, Long filed the underlying lawsuit against the Jupes and RDG because he believed they had repositioned their fences to encroach into the right-of-way of County Road 343, thereby narrowing the road and impeding Long's use of the road. Although Long initially included the County as a defendant in his lawsuit, the trial court dismissed Long's claim against the County. After Long filed the lawsuit, the Jupes took actions to obstruct Long's use of property the Jupes believed they owned.

During the course of the litigation, a surveyor was appointed by the trial court to determine the boundary between the parties' properties. Based on the survey and other developments during the litigation, Long and the Jupes each filed additional claims. As a result, claims were alleged pertaining to four roads or tracts of real property: (1) the West Road Strip; (2) the Simmons Subdivision Road; (3) the South Road; and (4) County Road 343. The trial court granted summary judgment with regard to certain claims and submitted other claims to a jury. Both Long and the Jupes filed appeals raising various issues pertaining to the West Road Strip, the South Road, and County Road 343. The following plat depicts the location of the various roads and tracts pertinent to this appeal:



The jury found that no Simmons Subdivision Road right-of-way existed, and there are no issues on appeal pertaining to that finding.

## WEST ROAD STRIP

A. Legal Sufficiency

In their first issue, the Jupes assert that the evidence is insufficient to support the jury's finding that Long owned record title to the West Road Strip, an 11.21 acre tract of land. The Jupes note that the primary evidence relied on by Long to establish record title is the analysis of David Gregory Smyth, the court-appointed independent surveyor.

The property in dispute is part of an approximate 95,000 acre subdivision known as the Simmons Subdivision. The original plat was divided into 20 and 40 acre tracts with individual field note descriptions for each tract. When the Jupes disagreed with a survey prepared by a surveyor hired by Long, the trial court appointed Smyth to survey the premises in controversy.

Smyth prepared a seventeen-page report with numerous attachments. In his report, Smyth stated that his construction of the boundaries and subdivision was based on his "studied opinion of the appropriate application of long standing surveying procedures that were developed to conform with long standing landmark Texas Supreme Court rulings." Smyth referred to the source information he had reviewed in conducting his work. Based on the information Smyth reviewed, Smyth concluded that no locating surveyor representing the developer actually laid out the individual tracts on the ground at the time the subdivision was created. Instead, the general conclusion was that the individual tracts of the Simmons Subdivision were created from "office protraction" based on the perimeter boundary of the parent tract. Smyth further explained that the record description of the parent tract was from a composite of original patents that were laid out "mostly with a magnetic compass and vara chain and consequently contained many errors and discrepancies." Smyth then detailed his general approach to the survey and identified eleven significant corners, monuments, markers, or lines that he located. Finally, Smyth explained his analysis of each of the disputed areas of land.

At trial, Smyth testified that he worked from the outer boundaries of the Simmons Subdivision plat which was marked by old fences that conformed to the general plat configuration. Smyth testified that the fences were the strongest available evidence of the outer boundary and that the field note descriptions of the tracts "fit" from east to west. Smyth testified regarding the various landmarks that he used in locating the outer boundaries. Smyth stated that two deeds in the Jupes' chain of title created a conflict in the location of the boundary in dispute because they used a metes and bounds description that was based on a fence-line survey in which the surveyor did not attempt to retrace the original outer boundary. However, those deeds also contained tract numbers referencing the original plat that did not create any conflicts. Smyth

explained that the acreage of the tracts had to be prorated to account for discrepancies between the actual acreage and the original plat description. Smyth further explained that the discrepancy was likely a result of the original plat being prepared in an office and not based on an actual measured survey. Smyth also explained his research and attempts to locate the original monuments which he was unable to find.

In their opening brief, the Jupes argue that Smyth's analysis is unreliable. The Jupes assert Smyth's analysis "is not reliable either factually or as a matter of law" and that Smyth "admitted that his analysis was inherently unreliable." Specifically, the Jupes contend Smyth: (1) did not locate any original monuments; (2) relied on a casual fence and disregarded the fence between the Jupes' and Long's properties; (3) ignored a corner described in the Simmons Subdivision dedication; (4) failed to follow the footsteps of the original surveyor; and (5) disregarded a thirty-foot road shown on the original plat. In response, Long argues that the Jupes did not preserve their complaint with regard to the reliability of Smyth's analysis because they did not object to the admission of his report into evidence or to his testimony at trial. In their reply brief, the Jupes assert their complaint is preserved because their contention is that Smyth's testimony is conclusory or speculative on the face of the record because Smyth failed to find any original monuments, ignored a thirty-foot road, and ignored a marker described on a prior survey.

When a reliability challenge requires the appellate court to evaluate the underlying methodology, technique, or foundational data used by an expert, an objection must be timely made in order to preserve a sufficiency complaint with regard to the expert's testimony. *Coastal Transport Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). However, when the challenge is restricted to the face of the record, for example when expert testimony is

speculative or conclusory on its face, a party may challenge the legal sufficiency of the evidence even in the absence of any objection to the admissibility of the expert's opinion. *Id*. In this case, the Jupes' complaints regarding the reliability of Smyth's testimony would require this court to evaluate the technique used by Smyth in determining the boundaries in dispute. On its face, Smyth's testimony is not speculative. Smyth provides support for the decisions he made in determining the boundaries and explains his methodology as within the parameters of long-standing surveying procedures. Accordingly, we hold that the Jupes failed to preserve their complaint regarding Smyth's testimony by failing to object at trial.

The Jupes' first issue is overruled.

## B. Boundary by Acquiescence

In their second issue, the Jupes contend the trial court erred in refusing to submit a jury question asking whether a fence between the parties' properties was recognized and accepted as the boundary between the two properties for more than 25 years.

Rule 278 of the Texas Rules of Civil Procedure requires the submission of questions that are raised by written pleadings and the evidence. TEX. R. CIV. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). When evaluating whether a party is entitled to a jury question, we examine the record for evidence supporting the submission of the question, and ignore evidence to the contrary. *Elbaor*, 845 S.W.2d at 243. A trial court may refuse to submit an issue only if no evidence exists to warrant its submission. *Id*.

Mere acquiescence in a line other than the true boundary line will not support a judgment in favor of such other line when there is no evidence, other than such acquiescence, of an agreement fixing the line. *Gulf Oil Corp. v. Marathon Oil Co.*, 152 S.W.2d 711, 714 (Tex. 1941). In order to establish a boundary by acquiescence, evidence must be presented to show

that "there was some uncertainty as to the true boundary, which resulted in a line being established (generally by a fence), and that thereafter the adjoining land owners acquiesced in and recognized this line as the true boundary line between them." *Boothe v. Fuentes*, 262 S.W.2d 754, 755 (Tex. Civ. App.—San Antonio 1953, no writ). "The mere erection of a fence off the boundary line is not in itself sufficient to make the doctrine applicable." *Id*. Evidence must show an agreement between adjoining landowners stemming from some initial uncertainty or dispute over the true boundary line, and evidence must show that the doubt or uncertainty was known to the landowners at the time they agreed to the boundary. *Mohnke v. Greenwood*, 915 S.W.2d 585, 595 (Tex. App.—Houston [14th Dist.] 1996, no writ); *McAllister v. Samuels*, 857 S.W.2d 768, 778 (Tex. App.—Houston [14th Dist.] 1993, no writ).

In this case, no evidence was presented to show that the fence was placed between the properties owned by the parties as part of an agreement to resolve a dispute or uncertainty as to the boundary line. Instead, the only evidence regarding the construction of the fence was Long's testimony that he constructed a fence in the area where a barbed wire fence previously existed in order to contain deer for his breeding operation. Because no evidence was presented to warrant the submission of a question to the jury regarding boundary by acquiescence, the trial court did not err in excluding the question requested by the Jupes. *See Elbaor*, 845 S.W.2d at 243.

The Jupes' second issue is overruled.

C. Adverse Possession

In their third issue, the Jupes contend the trial court erred in granting a no-evidence summary judgment with regard to their claim of adverse possession to the West Road Strip under the three-year and five-year adverse possession statutes.

In reviewing a no-evidence summary judgment, we review the evidence in the light most favorable to the respondent against whom the summary judgment was rendered. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). If the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, a no-evidence summary judgment cannot properly be granted. *Id*.

Under the three-year adverse possession statute, a person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.024 (West 2002). "Title" means "a regular chain of transfers of real property from or under the sovereignty of the soil." *Id*. at § 16.021(4). "Adverse possession" means "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *Id*. at § 16.021(1). Under the five-year adverse possession statute, a person must bring suit not later than five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who: (1) cultivates, uses, or enjoys the property; (2) pays applicable taxes on the property; and (3) claims the property under a duly registered deed. *Id*. at § 16.025.

In their brief, the only evidence cited by the Jupes in support of their contention is: (1) deeds contained in a supplemental clerk's record; and (2) an affidavit attached to the Jupes' Brief and Trial Amendment to Defendant's Response to Plaintiff's Motion for No Evidence Partial Summary Judgment. None of this evidence, however, was properly before the trial court when it made its ruling. Although the Jupes' response purported to incorporate the deeds by reference, the deeds could be considered proper summary judgment evidence only if they were attached to the response or on file at the time of the hearing. *Richards v. Allen*, 402 S.W.2d 158, 161 (Tex.

1966) (noting essential requirement that documents must be on file, either independently or as a part of the motion for summary judgment, the reply thereto, or some other properly filed instrument, at time of the summary judgment hearing); *Llopa, Inc. v. Nagel*, 956 S.W.2d 82, 88 (Tex. App.—San Antonio 1997, pet. denied) (refusing to consider note extensions that were recorded in county deed records where documents were not presented to the court in summary judgment proceeding); *Gensheimer v. Kneisley*, 778 S.W.2d 138, 140 (Tex. App.—Texarkana 1989, no writ) (noting summary judgment evidence must be on file). The record in this case contains no indication that the deeds, which the Jupes attempted to incorporate into their response by reference and which are contained in the supplemental clerk's record, were on file with the court at the time of the summary judgment hearing. Moreover, the record clearly indicates that the affidavit referenced by the Jupes in their brief was filed after the summary judgment hearing. "Summary judgment evidence may be filed late, but only with leave of court." *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996); TEX. R. CIV. P. 166a(c). Because the record contains no order granting leave to file the late affidavit, the affidavit was not properly before the trial court and cannot be considered by this court. *See Benchmark Bank*, 919 S.W.2d at 663; *Transcon. Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 704 (Tex. App.—Houston [14th Dist.] 2010, no pet.). In their brief, the Jupes rely on this affidavit to support elements of both their three year and five year adverse possession claims.

Although Long spends considerable time in his brief reviewing the four documents that were attached to the Jupes' response, the Jupes do not cite this evidence in support of their

argument in their brief.[2]  Accordingly, we do not further address this evidence.  *See DeGrate v. Executive Imprints, Inc.*, 261 S.W.3d 402, 408 (Tex. App.—Tyler 2008, no pet.) (noting appellant has a duty to show that the record supports its contention); *Blake v. Intco Inv. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.) (noting appellate court is not required to search the record for a scintilla of evidence raising a material fact issue without more specific guidance in briefing).  Because the evidence cited by the Jupes in support of their contention was not properly before the trial court at the summary judgment hearing, the Jupes' third issue is overruled.

### LONG'S STANDING REGARDING ENCROACHMENTS ON COUNTY ROAD 343

Although the jury found that "the fences along County Road 343 encroach[ed] on the public right of way," the trial court determined that Long lacked standing to present his claim regarding the encroachment of the fences owned by RDG and the Jupes.  In his first issue on cross-appeal, Long contends the trial court erred in concluding that he lacked standing.

A party's standing to seek relief is a question of law that we review *de novo*.  *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004); In *re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd).  When, as in this case, the trial court does not make separate findings of fact and conclusions of law, we imply the findings necessary to support the judgment.  *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re S.M.D.*, 329 S.W.3d at 13.  We review the entire record to determine if the trial court's implied findings are supported by any evidence.  *In re S.M.D.*, 329 S.W.3d at 13.

---

[2] The only sentence in the Jupes' brief referring to evidence other than the aforementioned deeds and affidavit states, "Finally, Jupe's affidavit testimony, combined with the materials attached to the Jupes' summary judgment response, establishes that the Jupes paid the applicable taxes on the property that included the western strip for the statutory period."  Even this vague reference would require this court to consider the affidavit that was not properly before the trial court in addition to the evidence attached to the response.

A plaintiff may not maintain an action unless he or she has standing to litigate the matters that are the basis of the lawsuit. *Stein v. Killough*, 53 S.W.3d 36, 40 (Tex. App.—San Antonio 2001, no pet.). A private landowner has standing to enforce a public dedication of a roadway if the landowner has a property interest that will suffer if the publicly-dedicated land is obstructed. *Brooks v. Jones*, 578 S.W.2d 669, 674 (Tex. 1979); *Stein*, 53 S.W.3d at 40; *Int'l Paper Co. v. Aydelott*, 584 S.W.2d 880, 881 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.).

In *Brooks*, the plaintiffs brought suit to enjoin the defendant from interfering with two roads. 578 S.W.2d at 670. The East-West road began on the west at the end of F.M. 727 and led in an easterly direction over the defendant's land, ending at a cabin owned by the defendant. *Id*. at 670. The North-South road intersected with the East-West road and led north to the plaintiffs' land. *Id*. at 671. The East-West road was a dedicated road, and the plaintiffs asserted the right to use the North-South road by prescription. *Id*. at 670-71. The Texas Supreme Court initially held that the plaintiffs failed to establish all of the requirements for a prescriptive easement; therefore, the plaintiffs had no rights in the North-South road. *Id*. at 674. The court then held that the plaintiffs did not have a justiciable interest in the East-West road because it did not touch on their land. *Id*. The court concluded, "Since [the plaintiffs] could not reach [their] property even if the East-West road was publicly dedicated, [they had] no property right which would give [them] a justiciable interest in [the] road." *Id*. Citing the holding in *Brooks*, the Texarkana court also held that private landowners lacked standing to enforce a public dedication of roads where the pleadings and testimony "showed that the roads [did] not lead to or touch any land in which any of the plaintiffs has a property interest." *Int'l Paper Co.*, 584 S.W.2d at 881.

In *Stein*, however, this court concluded that a private landowner had standing to enjoin the alteration or modification of a public road. 53 S.W.3d at 40. In that case, Joe Killough

sought an injunction to prohibit Jarvis and Betty Stein from shortening a median on a street which ran along the boundary of property owned by both Killough and the Steins. *Id*. at 38. This court first recognized the applicable legal standard, asserting "A private landowner may enforce a public dedication, if the landowner has a property interest that will suffer if the publicly dedicated land is used in a manner inconsistent with its original purpose." *Id*. at 40. This court then held that Killough had standing to bring his claim for injunctive relief, noting that the record established that Killough would suffer from the Steins' actions since the record contained evidence of "the possible diminution of Killough's property value" which was "an injury different than that which may be sustained by other citizens." *Id*.

Because the trial court in this case concluded Long lacked standing, the trial court must implicitly have found either that Long did not have a sufficient property interest or that the property interest would not suffer as a result of the encroachment on County Road 343's right of way. The record establishes that Long owns a 50 foot easement that extends from County Road 343 on the west to Long's property on the east. Accordingly, County Road 343 touches the easement in which Long had a property interest and Long's easement in turn leads to his property. Therefore, it would appear from the record, that Long has a property interest that could be affected by the encroachment of County Road 343. Although the Jupes contend that Long had an alternative route to access his property that would be unaffected by the area of County Road 343 which Long claimed the Jupes were obstructing, "there is no requirement that the disputed road be the only means of access." *Basham v. Gardner*, No. 10-05-00398-CV, 2007 WL 2389990, at *1 (Tex. App.—Waco Aug. 22, 2007, no pet.).

Long was also required to establish, however, that the encroachment would cause his property interest to suffer. Because the trial court concluded the Long lacked standing, we must

- 12 -

imply that the trial court found that Long's property interest would not suffer, and we review the entire record to determine if the trial court's implied finding is supported by any evidence.[3] *Worford*, 801 S.W.2d at 109; *In re S.M.D.*, 329 S.W.3d at 13.

As proof that his property interest would suffer, Long relies on his testimony that that the value of his property would be diminished if County Road 343 was obstructed. Long testified as follows:

> Well, you know, any time that your access gets diminished, if the road width gets narrowed, you know, in particular the way it started off with a large amount, didn't get back to where it was, any diminishment of your access reduces the value of your property. It might be a very small amount, depending on, you know, how obvious it is to somebody when they come down the road, whether it physically prevents somebody from doing something that they could have done had he not moved it.
>
> The more damaging thing to me is that this whole process of trying to get them to move their fences back, not asking for a dime, just asking them to move them back, has been very expensive. It has taken a lot of time. And it damages me from future sales.
>
> As a licensed real estate broker I'm sure anybody that's ever sold a house, they know that you have to disclose anything about the property that you're selling that's negative. If it's about the property itself or it can be about the neighborhood, anything, you know, that might influence a buyer's decision to buy must be disclosed.
>
> Well, this lawsuit that I've had with the Jupes and with RDG is something that I would have to disclose. You know, I don't know if I'd have to disclose the amount that it's cost me, but the fact that I've sued them and I couldn't force them to move the property back, the fact that he has said publicly and in his deposition that he wants to close that county road, and that he actually took steps to narrow that county road without anybody's permission that I know of.

In addition to Long's testimony, however, the evidence presented at trial included photographs of County Road 343, depicting the location of the fences in relation to their prior location and in relation to the actual road used for traveling. Moreover, Smyth's report stated that at the narrowest point, County Road 343 is currently about 49-1/2 feet wide, and Gene Jupe testified

---

[3]We note that because the issue of standing in *Stein* was raised for the first time on appeal, the standard of review in that case differs from the standard of review applicable in the instant case. *See Stein*, 53 S.W.3d at 40 (reviewing entire record for evidence supporting subject matter jurisdiction).

that County Road 343 was 51 feet where it passes the location of Long's easement. Finally, evidence was introduced that Long's easement was fifty feet in width; however, the trial court restricted the width of any gate erected in relation to that easement to 17 feet. Based on this evidence, the trial court could have rejected Long's testimony and implicitly found that Long's property interest would not suffer as a result of the encroachment of the fences, and such an implied finding supports the trial court's judgment dismissing Long's claim based on standing. *See Worford*, 801 S.W.2d at 109; *In re S.M.D.*, 329 S.W.3d at 13.

In his reply brief, Long refers to an email from the trial court which was incorporated by reference into the trial court's order on post-verdict motions. In the email, the trial judge stated, "I reject Jupe's argument that there is no evidence that the fences are too close to the road." Long relies on this statement to argue that the trial court found "nothing de minimus about the encroachment." Contrary to Long's interpretation of the trial court's statement, we interpret the statement as rejecting the Jupes' challenge to the jury's finding that their fence encroached on the public right of way. In their post-verdict motion, the Jupes argued that Long lacked standing because no evidence was admitted at trial to establish that their fences encroached into the right of way. This was the argument rejected in the trial court's email. The email did not express the specific basis for the trial court's conclusion that Long lacked standing. Because the record contains evidence to support an implied finding that Long's property interest would not suffer as a result of the encroachment and because such a finding supports the trial court's judgment, we overrule Long's first issue on cross-appeal.

### SOUTH ROAD STRIP

The trial court's judgment first declares that Long owns a 50-foot easement across the Jupes' property from County Road 343 to Long's property. Based on the jury's findings, the

trial court's judgment then declares that the "South Road" being used by Long from County Road 343 to his property is not located in the easement. The trial court's judgment finally declares that Long "has no prescriptive right, as against Defendants [the Jupes], to use the South Road Strip." In the trial court's email that we previously discussed, the trial judge states that Long "has no prescriptive rights to keep using the South Road."

In his second, third, and fourth issues on cross-appeal, Long asserts the Jupes do not own the South Road Strip, so the judgment, while true, is confusing. Long further contends that the evidence either established his prescriptive right to use the South Road Strip as a matter of law or raised a fact issue such that the trial court erred in refusing Long's requested jury charge question pertaining to his prescriptive rights. The Jupes respond that Smyth's testimony that they did not own the South Road Strip should be disregarded based on the same lack of reliability argument raised by the Jupes with regard to the West Road Strip. Alternatively, the Jupes contend that whether they owned the South Road Strip was not an issue that was submitted to the jury.

In order to establish entitlement to a prescriptive easement, the plaintiff must use someone else's land in a manner that is open, notorious, exclusive, and adverse for the requisite period of time. *Brooks*, 578 S.W.2d at 673. "It has long been the law in Texas that when a landowner and the claimant of an easement both use the same way, the use by the claimant is not exclusive of the owner's use and therefore will not be considered adverse." *Id.*

Recognizing that the law as stated in *Brooks* is problematic, Long argues that joint use will not preclude the existence of an easement by prescription if the evidence also shows a "claim of right" by the party seeking to establish the easement. Long cites *Scott v. Cannon*, 959 S.W.2d 712, 721-22 (Tex. App.—Austin 1998, pet. denied), to support this argument. We disagree that *Scott* supports Long's argument for two reasons. First, *Scott* does not rely on a

mere "claim of right" as creating an exception to the law regarding joint use. Instead, *Scott* refers to "*both* joint use *and* independent acts to show adversity." *Id*. at 722 (emphasis in original). Long cites no evidence in the instant case of "independent acts to show adversity" with regard to the South Road Strip that would be similar to the evidence in *Scott*.[4] Second, both the Texas Supreme Court and this court continue to cite joint use as a basis for rejecting a claim of easement by prescription. *See Tran v. Macha*, 213 S.W.3d 913, 914-15 (Tex. 2006) (quoting the same sentence in *Brooks* quoted in the preceding paragraph); *Estate of Trevino v. Melton*, No. 04-07-00654-CV, 2009 WL 891881, at *4 (Tex. App.—San Antonio Apr. 3, 2009, pet. denied) ("Joint continuous use, without a legally adverse or hostile act, is not sufficient.") (citation omitted).

To summarize, although Long may believe the trial court's judgment is confusing, such a contention does not make the judgment reversible. If the trial court's judgment is read to mean that the Jupes did not own the South Road Strip, Long could not have established a prescriptive easement with regard to the land without joining the true owner as a necessary party. If the trial court's judgment is read to mean that Long failed to establish his entitlement to a prescriptive easement, the evidence undisputedly established joint use; therefore, Long's use was not exclusive. *See Brooks*, 578 S.W.2d at 673. Moreover, the jury charge requested by Long that joint use is sufficient "if the claimant establishes that the claimant acted independently of rights claimed by others," misstates the law. Even under *Scott*, the acts must not only be independent,

---

[4] In *Scott*, the parties claiming the prescriptive easement, the Scotts, caused an affidavit to be filed in the deed records in connection with a loan transaction in 1964 stating that the easement was a public road. 959 S.W.2d at 718. The affidavit was filed without notice to the parties who owned the land which the easement crossed, the Cannons, or their predecessors in title. *Id*. When the Cannons first discovered the affidavit in 1972, the Cannons informed the Scotts that the road was not a public road; however, the Scotts refused to remove the affidavit from the deed records unless the Cannons granted them an express easement. *Id*. The Scotts continued to use the road after 1972, even though there was no evidence that the Cannons gave them permission to use the road after the affidavit was discovered. *Id*. at 772. There also was no evidence that the Scotts even believed that they needed permission after that date. *Id*. Finally, the Scotts helped pay for repairing and maintaining the road which was inconsistent with the Cannons' claim that the road belonged to them. *Id*

but must also "show adversity." 959 S.W.2d at 722. Accordingly, Long's second, third and fourth issues on cross-appeal are overruled.

### 50 FOOT EASEMENT – WIDTH AND HEIGHT RESTRICTIONS

After declaring that Long holds record title to a fifty-foot easement, the trial court granted Long a permanent injunction preventing the Jupes from interfering with Long's use and enjoyment of the easement "according to the terms and conditions contained herein." The judgment then states, "Long is entitled to install a gate on the eastern and western ends of the easement, at his expense, not to exceed 17 feet. Such gates shall be compatible in height with the fences."

In his fifth issue on cross-appeal, Long contends that the trial court erred in imposing width and height restrictions in granting the injunctive relief. Long asserts that one of the two deeds granting his record title to the easement permitted him to install gates and contained no such restrictions. Long cites no authority to support his contention other than a case generally stating that a trial court abuses its discretion if it acts arbitrarily. *See* TEX. R. APP. P. 38.1(i) (argument must contain appropriate citations to authorities); *see also Dail v. Couch*, 99 S.W.3d 390, 392 (Tex. App.—Corpus Christi 2003, no pet.) (noting appellants cited general rule regarding abuse of discretion without argument as to how it applied in support of their contention).

"A grant or reservation of an easement in general terms implies a grant of unlimited reasonable use such as is reasonably necessary and convenient and as little burdensome as possible to the servient owner." *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974). In this case, the deed in question states, "The right-of-way herein conveyed shall remain unobstructed with the exception of a gate at the east boundary and a gate at the west boundary thereof."

Accordingly, the term "gate" is a general term implying a grant of the right to erect and use a gate such as is reasonably necessary and convenient and as little burdensome as possible to the Jupes as the servient owners. *See id.* Apart from arguing that the conveyance of the easement did not expressly permit the trial court to impose height and width restrictions with regard to the gate, Long does not argue or cite to any evidence that a different height and width are required in order for a gate to be reasonably necessary or convenient. Gene Jupe testified that the gate needed to be the same height as the fence because that height was important to the deer operations of both Long and the Jupes. Accordingly, the trial court did not abuse its discretion in establishing a specific height and weight of a gate that would not make the use of the easement inconvenient, but that would make the gate as least burdensome as possible to the servient owner. *See Dail*, 99 S.W.3d at 392 (upholding trial court's establishment of width of easement). Similarly, the deed granting the easement did not address who was required to pay the expense for such a gate. Therefore, the trial court could have concluded that requiring Long to pay the expense would be less burdensome to the servient owner. *See id.* Accordingly, Long's fifth issue on cross-appeal is overruled.

## ATTORNEY'S FEES

A. Long's Attorney's Fees

In their fourth issue, the Jupes contend the trial court erred in awarding Long attorney's fees under section 16.034 of the Texas Civil Practice and Remedies Code because they were not in "unlawful" possession of the West Road Strip. The Jupes contend they should be likened to bona fide purchasers based on the metes and bounds description in their deed which included the

West Road Strip.[5]  The Jupes further assert that Long should only be entitled to recover attorney's fees incurred after he amended his pleading to allege his claim under section 16.034.

Section 16.034(a) of the Texas Civil Practice and Remedies Code provides: "In a suit for the possession of real property between a person claiming under record title to the property and one claiming by adverse possession, if the prevailing party recovers possession of the property from a person unlawfully in actual possession, the court … may award costs and reasonable attorney's fees to the prevailing party."  TEX. CIV. PRAC. & REM. CODE ANN. § 16.034(a)(2) (West Supp. 2010).  Because the statute affords the trial court a measure of discretion in deciding whether to award attorney's fees, we review the trial court's award of attorney's fees under section 16.034 for an abuse of discretion.  *Maldonado v. Empire Land Co., Ltd.*, No. 04-09-00104-CV, 2010 WL 3250025, at *2 (Tex. App.—San Antonio Aug. 18, 2010, no pet.) (mem. op.).  A trial court abuses its discretion when its decision is arbitrary, unreasonable and without reference to any guiding rules and principles.  *Id*.

With regard to the Jupes' contention that Long was not entitled to attorney's fees because their possession of the West Road Strip was not unlawful, this court has previously rejected such an argument in a similar case.  *See id*.  In *Maldonado*, the appellants asserted that the appellee was not entitled to recover attorney's fees under section 16.034(a) because the jury did not determine that their possession of the property was unlawful.  2010 WL 3250025, at *1.  This court noted that unlawful and actual possession are necessary elements of an adverse possession claim.  *Id*. at *2.  This court held that the appellants' possession was rendered unlawful by their pleading adverse possession and by the jury awarding title and possession to the appellee.  *Id*. at

---

[5] The Jupes' deed contained both: (1) a reference to the tract numbers from the Simmons Subdivision plat that were historically referenced in the deeds for that area; and (2) a metes and bounds description.  Smyth testified that the metes and bounds description created an internal conflict in the deed.  Smyth further testified that the metes and bounds description was based on a fence survey, and fence surveys are neither intended nor reliable for establishing boundaries.

*3. For the reasons stated in *Maldonado*, we reject the Jupes' contention that the trial court abused its discretion in awarding Long attorney's fees. The Jupes' adverse possession claim coupled with the jury's determination that Long owned record title rendered the Jupes' possession unlawful. *See id.*

The Jupes cite no authority to support their contention that Long should be entitled to recover attorney's fees incurred only after he amended his pleading to allege his claim under section 16.034. Moreover, the Jupes' contention is contrary to at least two settled legal principles. First, the relation-back doctrine provides that an amended pleading relates back to the filing of the original pleading. *See Bailey v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 261 S.W.3d 147, 150 (Tex. App.—San Antonio 2008), *aff'd*, 332 S.W.3d 395 (Tex. 2011); *see also In re Estate of Henry*, 250 S.W.3d 518, 527 (Tex. App.—Dallas 2008, no pet.) (finding no abuse of discretion by trial court awarding attorney's fees based on amended pleading filed ten days before trial); *Zapalac v. Cain*, 39 S.W.3d 414, 418 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (applying relation back doctrine to reject contention that attorney's fees could be awarded only from date of amended pleading). Accordingly, Long's amended pleading specifically requesting attorney's fees under section 16.034 would relate back to the date his original petition was filed. In addition, "if a party pleads facts which, if true, entitle him to the relief sought, he need not specifically plead the applicable statute in order to recover under it." *Mitchell v. LaFlamme*, 60 S.W.3d 123, 130 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Even if a party pleads an incorrect or inapplicable theory or statute in support of an attorney's fee award, the award is not precluded. *Id.* In this case, even in his original petition, Long pled for the recovery of attorney's fees albeit under a different statute. Accordingly, the Jupes' fourth issue is overruled.

B. Failure to Award Attorney's Fees to the Jupes

In their fifth issue, the Jupes contend the trial court erred in refusing to award the Jupes attorney's fees because they prevailed with regard to the declaratory relief requested by Long in relation to the Simmons Subdivision Road and the South Road. The Jupes also contend that both the Jupes and RDG prevailed with regard to the declaratory/injunctive relief that Long sought with regard to the fences encroaching on County Road 343. The Jupes argue that the jury's award of $0 for the reasonable attorneys' fees for the necessary services provided by the Jupes' attorneys for preparation and trial is against the great weight and preponderance of the evidence.

With regard to RDG, Long correctly responds in his brief that no question was submitted to the jury with regard to attorney's fees incurred by RDG. Whether attorney's fees are reasonable and necessary are fact issues that must be submitted to a jury. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Because RDG failed to request a jury question regarding the reasonableness and necessity of its attorney's fees, RDG waived recovery of attorney's fees. TEX. R. CIV. P. 279.

With regard to the Jupes' attorney's fees, the Uniform Declaratory Judgments Act entrusts attorney's fee awards to the trial court's sound discretion. *Bocquet*, 972 S.W.2d at 21. Accordingly, we review such an award under an abuse of discretion standard. *Id*. It is not an abuse of discretion to deny attorney's fees under the UDJA on the basis that both parties had legitimate rights to pursue such that it would not be equitable or just to award either attorney's fees. *See Bauer v. Williams*, No. 03-07-00494-CV, 2008 WL 3166311, at *2 (Tex. App.—Austin Aug. 8, 2008, no pet.) (mem. op.); *Sunday Canyon Prop. Owners Ass'n v. Annett*, 978 S.W.2d 654, 659 (Tex. App.—Amarillo 1998, no pet.). Although the trial court ultimately ruled in the Jupes' favor with regard to the claims relating to the encroachment on County Road 343,

the South Road and the Simmons Road,[6] the trial court might still have believed that Long had a legitimate right to pursue in regard to those claims. *See Bauer*, 2008 WL 3166311, at *2; *Sunday Canyon Prop. Owners Ass'n*, 978 S.W.2d at 659. As a result, the trial court did not abuse its discretion in denying the Jupes' attorney's fees on that basis.

We note that an argument could be made that the jury's finding that no attorney's fees were reasonable and necessary could have been the basis for the trial court's ruling. *See* TEX. R. APP. P. 44.1(a) (reversal may be premised on error that probably prevented appellant from properly presenting the case to the court of appeals). We also agree with the Jupes that a jury's award of no attorney's fees is improper where the party seeking recovery offers evidence of the attorney's fees incurred and the value thereof. *Midland Western Bldg, L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex. 2009). However, the trial court in this case rejected the jury's award of no conditional appellate attorney's fees for the Jupes; therefore, it is apparent from the face of the record that the trial court was familiar with the law. Moreover, we indulge every presumption in favor of the trial court's judgment. *Patterson v. Brist*, 236 S.W.3d 238, 240 (Tex. App.—Houston [1st Dist.] 2006, pet. dism'd); *Howard v. East Tex. Baptist Univ.*, 122 S.W.3d 407, 413 (Tex. App.—Texarkana 2003, no pet.); *In re S.B.C.*, 952 S.W.2d 15, 17-18 (Tex. App.—San Antonio 1997, no writ). Therefore, we must presume the basis for the trial court's refusal to award attorney's fees to the Jupes was its determination that Long had a legitimate right to pursue the claims. *See Bauer*, 2008 WL 3166311, at *2; *Sunday Canyon Prop. Owners Ass'n*, 978 S.W.2d at 659.

The Jupes' fifth issue is overruled.

---

[6] As previously discussed, the trial court's judgment states, "Long has no prescriptive right, as against the Defendants, to use the South Road Strip." Long argues that the judgment can be read to mean that Long has no prescriptive right as against the Jupes because they do not own the South Road Strip. If this interpretation is accepted, then the ruling may not have exactly been in the Jupes' favor.

C.  Increase in Long's Attorney's Fees

In his sixth issue on cross-appeal, Long contends that if he prevails on the merits of any claims for which the trial court erred in denying him recovery, he should also recover the attorney's fees attributable to that claim.  Because we affirm the trial court's judgment, we do not further address this contention.

D.  Jupes' Appellate Attorney's Fees

In his seventh issue on cross-appeal, Long contends the trial court erred in contingently awarding the Jupes attorney's fees in the event the Jupes prevailed on appeal.  Long asserts the trial court could not disregard the jury's finding that $0 would be a reasonable attorney's fee for necessary services by the Jupes' attorney.

As previously noted, a jury's award of no attorney's fees is improper where the party seeking recovery offers evidence of the attorney's fees incurred and the value thereof.  *Midland Wester Bldg., L.L.C.*, 300 S.W.3d at 739.  Where such evidence is introduced, a jury may rationally conclude that a reasonable and necessary fee is less than the amount sought; however, "an award of no fees [is] improper in the absence of evidence affirmatively showing that no attorney's services were needed or that any services provided were of no value."  *Id.*  In this case, both Long's attorney and the Jupes' attorney testified regarding a reasonable fee for necessary appellate services.  In fact, the Jupes' attorney adopted the testimony of Long's attorney in this regard.  Accordingly, the trial court could have rejected the jury's finding of $0 on this basis.

Long's seventh issue on cross-appeal is overruled.

**SURVEYOR'S FEE**

In his eighth issue on cross-appeal, Long contends the trial court erred in requiring him to pay one-half of the court-appointed surveyor's fee. Long asserts that Smyth principally agreed with the positions that Long had taken; therefore, the Jupes should have been required to pay the entire fee.

The order appointing Smyth to survey the premises in controversy stated that the surveyor's fee shall be taxed as a cost of court. The order further stated that Long was required to fund half the cost and the Jupes and RDG were required to fund the other half. Finally, the order stated, "On final trial the court may order such other allocation as is fair and just, taking into account who the prevailing party is regarding each of the various areas in dispute that are surveyed."

We review a trial court's decision regarding costs under an abuse of discretion standard. *Marlin v. Robertson*, 307 S.W.3d 418, 435 (Tex. App.—San Antonio 2009, no pet.). The primary claims in this case pertained to: (1) the West Road Strip; (2) the South Road; (3) the Simmons Subdivision Road; and (4) the encroachments into County Road 343. Long prevailed on the West Road Strip, while the Jupes prevailed on the Simmons Subdivision Road. With regard to the South Road, the trial court may have determined that each party prevailed in part. Although Long prevailed in establishing a recorded easement, the jury found the South Road was not built in that easement, and Long did not prevail on his claim that he had a prescriptive easement to the South Road Strip. Finally, the trial court concluded Long lacked standing to pursue the encroachment claim. Therefore, since each party prevailed on some of the claims addressed by Smyth in his survey, requiring an equal division of the surveyor's fee between the parties was not an abuse of discretion. Long's eighth issue on cross-appeal is overruled.

**PUNITIVE DAMAGES**

In his final issue on cross-appeal, Long contends the trial court erred in disregarding the jury's punitive damages finding. Long argues that he was entitled to recover the punitive damages because he was awarded injunctive relief.

In *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 903 (Tex. 1985), the Texas Supreme Court reaffirmed the general rule that in order to recover punitive damages, a plaintiff must "allege, prove and secure jury findings on the existence and amount of actual damages sufficient to support an award of punitive damage." In discussing the argument made in a dissenting opinion which is similar to the argument being made by Long, the Texas Supreme Court asserted that in every case in which punitive damages have been allowed incident to equitable relief, "the equitable relief has involved the *return of property* to the injured party." *Id*. at 904 n.3. The court rejected the contention that bare injunctive relief would support a punitive damages award. *Id*. The court also noted that in the case cited by appellant in support of his argument, the jury "made findings of the fair market value of the property returned to the plaintiff." *Id*. at 904-05.

Long asserts that the judgment in this case gives him the right to recover the West Road Strip from the Jupes; therefore, the cases permitting an award of punitive damages in conjunction with the return of property are applicable. Long cites for support a case involving the rescission of a stock transaction, where the court held the consideration paid for the stock constituted actual damages to serve as the basis for the recovery of punitive damages, and a case involving the imposition of a constructive trust, where the plaintiff had paid a cash consideration for the acquisition of certain leases. *See Texas Capital Securities, Inc. v. Sandefer*, 58 S.W.3d 760, 773-74 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Procom Energy, L.L.A. v. Roach*, 16

S.W.3d 377, 380, 385 (Tex. App.—Tyler 2000, pet. denied). Thus, the circumstances addressed and the relief granted in the cited cases are readily distinguishable from the "bare injunctive relief" granted in the instant case.

In addition, we must also consider the jury charge and the jury's actual findings. The jury charge first asked whether the Jupes had intentionally obstructed Long's access to the West Road Strip, and the jury found that they did. The jury charge then conditionally asked what sum of money should be awarded to Long for actual damages, and the jury found $0. Finally, the jury charge asked what amount should be awarded to Long for punitive damages, and the jury found $50,000.00. Therefore, in this case, the jury expressly awarded $0 in actual damages for the claim for which it awarded punitive damages. "When a jury fails to find a plaintiff has sustained actual damages, the plaintiff is foreclosed from recovering exemplary damages." *Wright v. Gifford-Hill & Co.*, 725 S.W.2d 712, 714 (Tex. 1987).

Finally, this court has held that where punitive damages are recoverable in connection with equitable relief, an issue and finding regarding the value of the equitable relief is necessary. *Martin v. Tex. Dental Plans, Inc.*, 948 S.W.2d 799, 804-05 (Tex. App.—San Antonio 1997, writ denied). In *Martin*, the jury found a defendant liable for wrongful discharge of employment, found no actual damages, but awarded punitive damages after finding the defendant's actions were willful and malicious. *Id*. at 804. This court noted the general rule that a recovery of actual damages is a prerequisite to receipt of exemplary damages. *Id*. The appellant then argued that he was entitled to reinstatement which was an equitable remedy and would therefore permit the recovery of punitive damages. *Id*. at 805. This court rejected the argument, reasoning:

> It is true that Texas courts will not deny punitive damages because an action is equitable rather than legal. However, punitive damages must bear a reasonable proportion to actual damages whether they are in relation to monetary damages or equitable relief. In the cases in which punitive damages have been awarded

incident to equitable relief, a fact finder has assigned a concrete value to the equitable relief awarded sufficient to support an award of punitive damages.

In the present case, appellant obtained no finding of the value of the equitable relief sought on which an award of punitive damages could be based. While a jury issue is not necessary to the award of reinstatement, if such relief is to serve as a basis for punitive damages, an issue and finding regarding the value of the reinstatement is necessary.

*Id*. at 805 (citations omitted).  Accordingly, we overrule Long's final issue on cross-appeal.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice